UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF PROSPER OPERATORS, INC. AS OPERATORS OF THE MOTOR VESSEL AMBER, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | * CIVIL ACTION NO.  2:16-CV-01363<br>* (Admiralty)<br>*<br>* JUDGE ROBERT R. SUMMERHAYS<br>*<br>* MAGISTRATE JUDGE KATHLEEN KAY |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT ON ISSUE OF JONES ACT
## SEAMANS STATUS FILED BY PROSPER OPERATORS, INC.

**MAY IT PLEASE THE COURT:**

Prosper Operators, Inc. ("Prosper") submits this memorandum in support of its motion for summary judgment and requests this Honorable Court enter judgment in its favor and against Mitchell Navarre ("Claimant").  The undisputed facts establish that Claimant does not have a valid claim against Prosper because he does not qualify as a Jones Act seaman as a matter of law.  Therefore, Prosper requests that this Court grant its motion, hold that Claimant is not a Jones Act seaman, and dismiss Claimant's Jones Act claimant against Prosper, with prejudice, and award Prosper all costs and attorney fees incurred with filing the instant motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of an alleged incident that took place on or about June 14, 2015.[2]  On that date, Claimant was working for Prosper as a C Class Operator.[3]  He was assigned to the Sweet Lake oil production field located in Cameron Parish.[4]  There are a number of wells with well-control units (often called Christmas trees) located throughout Sweet Lake.[5]  Surrounding each well-control unit is a stationary work platform.[6]

As a C Level Operator, Claimant was responsible for travelling to the various well-control units located throughout Sweet Lake to read the gauges and monitor for leaks.[7]  At times, Mr. Navarre also operated the surface production equipment, compressors, pumps, and generators located at these well-control units.[8]  All of the work performed at these well-control units was performed from the platform at each unit.[9]

Claimant and his direct Prosper supervisor, Steven Matt, worked seven days on at the Sweet Lake field and seven days off.[10]  During their seven days on, they both lived in a trailer located at a fixed platform in Sweet Lake.  When they were off, two other Prosper employees replaced them at the Sweet Lake field.[11]  The typical work day lasted 12 hours but Claimant and Mr. Matt were on call for 24 hours per day if there was an issue with one of the well-control units.[12]

---

[2] See Petition for Damages (Rec. Doc. 7-4 and Rec. Doc. 34-1).
[3] See Declaration of Charles Abshire, attached as Exhibit A.
[4] See Exhibit A.
[5] See Declaration of Steven Matt, attached as and hereinafter referred to as Exhibit B.
[6] Exhibit B.
[7] Exhibit B; see also Deposition of Claimant, attached as and hereinafter referred to as Exhibit C, p. 20-21.
[8] Exhibit B.
[9] Exhibit B.
[10] Exhibit B and Exhibit C, p. 13.
[11] Exhibit C, p. 12-13.
[12] Exhibit C, p. 13-14.

During that 12 hour period, Claimant was expected to travel to every well-control unit in Sweet Lake field two times.[13]  However, if there was a problem with one of the well-control units, it was not uncommon for Claimant to only travel to one well-control unit and stay on the unit all day in order to fix the problem.[14]  Not including the time working on each of the various well-control units, the total amount of time it would take to travel from the fixed platform to each well-control unit the back to the fixed platform was approximately ten minutes.[15]

Each well-control unit is accessible only by water.  In order to travel to a well-control unit, a person had the option of taking one of two boats, the M/V AMBER which is a 23 foot, aluminum boat with an outboard motor or a 40 foot 202 crew boat with an inboard motor.[16]  Also available at the fixed platform was an 80 foot UCO barge that was utilized to carry chemicals to the well-control units, if needed.  The sole purpose of those boats was to enable the workers to service the production field.[17]

The three boats located at the fixed platform in Sweet Lake were available for any person working at the platform to use and remained at the platform during the periods in which Claimant and Mr. Matt were off.[18]  While Claimant typically took the M/V AMBER to travel to each well-control unit, he had the option of taking the 202 crew boat and often did when the water was rough.[19]

On June 14, 2015 around 8:30 am, Claimant had traveled via the M/V AMBER to one of the well-control units in Sweet Lake field to adjust gas rates after a compressor had

---

[13] Exhibit B.
[14] Exhibit B.
[15] Exhibit B.
[16] Exhibit B and Exhibit C, p. 14-15, 27-28.
[17] Exhibit C, p. 27-28.
[18] Exhibit C
[19] Exhibit C, p. 84.

been rebuilt.[20]   Instead of stopping the boat and tying it off at the well-control unit, Claimant let the boat idle against the well-control platform while he went onto the platform to work.[21]  However, because the water was allegedly rough, the M/V AMBER started move away from the platform.[22]  Claimant jumped from the platform into the M/V AMBER, injuring his left foot.  Claimant remained at work until his seven day shift was over on June 18, 2015.[23]

After investigating the accident and reporting to its insurer, Prosper paid Claimant benefits pursuant to the Longshore Harbor Workers' Compensation Act (LHWCA).  On The first notice that Claimant was asserting a seaman claim was April 7, 2016 when he filed a Jones Act claim in the 38th Judicial District Court for the Parish of Cameron, alleging he was a seaman who suffered debilitating injuries to his neck, back, and left foot in the course of his employment by Prosper's alleged negligence and the unseaworthiness of the M/V AMBER.[24]

On September 28, 2016, Prosper filed the present action for *Exoneration from or Limitation of Liability*, as operators of the M/V AMBER, seeking to limit its potential liability to the value of the M/V AMBER, $20,000.00.[25]  On April 6, 2017, Claimant filed his first *Motion to Dismiss* under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(5), arguing that this action should be dismissed for improper service of process pursuant to Rule 12(b)(5) because Claimant was not served pursuant to Federal Rule of Civil Procedure Rule 4.[26]

---

[20] Exhibit B and Exhibit C, p. 37-38.
[21] Exhibit C, p. 47-48.
[22] Exhibit C, p. 47-48.
[23] Exhibit C, p. 56.
[24] See Petition for Damages (Rec. Doc. 7-4 and Rec. Doc. 34-1).
[25] Rec. Doc. 1.
[26] Motion to Dismiss Limitation Action (Rec. Doc. 7).

On February 20, 2019, Prosper filed a *Motion for Extension to Modify Court's Monition Order to Extend Time to Publish Notice.*[27] As noted in that motion, the notice was not published in the requisite time periods in 2017, in part, because of the pending motion to dismiss.   On March 20, 2019, Claimant filed an opposition to Prosper's motion[28] and also filed a second *Motion to Dismiss Pursuant to Rule 12(b)(5).*  Prosper opposed the second motion to dismiss.   Ruling on both of those motions are pending before this Court.

On April 13, 2017, Claimant filed a second a Jones Act claim in this Court alleging he was a seaman who suffered debilitating injuries to his neck, back, and left foot in the course of his employment by Prosper's alleged negligence and the unseaworthiness of the M/V AMBER.[29]   Prosper files the instant motion to address whether Claimant can maintain his Jones Act claim since he does not qualify as a seaman.

## II.   LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[30]   Issues of material fact are genuine only if they require resolution by a trier of fact.[31]  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.[32] When the moving party has carried its

---

[27] See Motion for Extension (Rec. Doc. 29)
[28] Opposition to Motion for Extension (Rec. Doc. 34)
[29] See Claim of Mitchell Navarre, (Rec. Doc. 10).
[30] Fed. R. Civ. P. 56(c).
[31] *Anderson v. Liberty Lobby, Inc.,*477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).
[32] See *Stults v. Connoco, Inc.,* 76 F.3d 651, 656 (5th Cir. 1996).

burden under Rule 56(a), its opponent must come forward with specific facts showing that it is a genuine issue for trial rather than simply showing that there is some metaphysical doubt as to the material facts.[33]   While it is well-settled that the determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact and it is usually inappropriate to take the question from the jury.[34]  However, judgment as a matter of law is mandated where the facts and the law will reasonably support only one conclusion.[35]   As Prosper demonstrates below, the undisputed facts and law reasonably support only one conclusion; thus, summary judgment is appropriate.

### B. Seaman Status

Claimant's Jones Act claim turns on whether his qualified as a seaman under that statute.  Land-based workers are not seamen.[36]  To qualify as a seaman, an employee must prove that he meets both prongs of the test set out by the United States Supreme Court in *Chandris, Inc. v. Latsis*.[37]  First, he must prove that his duties contribute to the function of the vessel or to the accomplishment of its mission.  Second, he must have a connection to a vessel in navigation (or to an identified group of such vessels) that is substantial in terms of both its duration and its nature.[38]  ___Both prongs of this test must be satisfied to___

---

[33] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

[34] *McDerMatt Int'l, Inc. v. Wilander*, 498 U.S. 337, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991).

[35] *See Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997), *citing Becker v. Tidewater, Inc.*, 335 F.3d 376, 386 (5th Cir. 2003). *See also Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1995) (the determination of seaman states is generally one of fact, however, seaman status may be decided on summary judgment where the evidence does not support a finding, as a matter of law, that the claimant is permanently assigned to a Jones Act vessel), *citing Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir. 1990)

[36] *Hufnagel v. Omega Serv. Indust., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999) (citing *Harbor Tug and Barge Co., v. Papai*, 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997)).

[37] *Chandris, Inc., v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172 (1995).  See also, *McDerMatt Int'l., Inc. v. Wilander*, 498 US 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991).

[38] 515 U.S. at 368.  This test was taken, in part, from the Court's holding in *McDerMatt, supra*.

6

*attain "seaman" status*.[39]  The purpose of this test is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea."[40]

In order to determine whether an employee is a "seaman," one must look to both the *type* of activities performed by the employee and the *relationship* the employee has, if any, to a vessel.  To that end, the Supreme Court in *Chandris* emphasized that "[a] maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties are."[41]

Whether a person is a seaman is ordinarily a question of fact for the jury.[42] Summary judgment is appropriate, however, when "the facts establish [the lack of seaman status] beyond a question as a matter of law," and no reasonable evidentiary basis exists to support a jury finding that the injured person is a seaman.[43]

### 1. The undisputed facts establish that Claimant did not contribute to the function or mission of a vessel.

To qualify for seaman status, Claimant must first show that he contributed to the function or mission of the M/V AMBER.[44]  A court is often able to determine the "function of the vessel" as a matter of law.[45]  The Fifth Circuit previously held that when an employee uses boats primarily as transportation to and from wells on which he worked,

---

[39] *Id.* at 354. (emphasis added).
[40] *Chandris,* 515 U.>S. at 368.
[41] *Id.* at 371.
[42] *Ellender v. Kiva Const. & Engin'g, Inc.,* 909 F.2d 803, 805 (5th Cir. 1990).
[43] *Id.* (quoting *Barrett v. Chevron USA, Inc.,* 781 F.2d 1067, 1074 (5th Cir. 1984)(other citations omitted)).
[44] *Chandris,* 515 U.S. at 368.
[45] *Ketnor v. Automatic Power, Inc.,* 850 F.2d 236, 239 (5th Cir. 1988) (citing *Munguia v. Chevron Co., U.S.A.,* 768 F.2d 649 (5th Cir. 1985))

the mission of the boats were to transport workers and their tools to the wells.[46]  The Fifth Circuit differentiated boats used purely for transportation from special purpose vessels "specifically constructed to store and carry tools, pipe, or any other equipment necessary..." for work.[47]

In this matter, there is nothing in the record showing that the M/V AMBER (or 202 crew boat for that matter) was anything other than a mere transport vehicle.  In fact, Claimant testified that the sole purpose of the M/V AMBER (and the 202 crew boat) was to provide a means of transportation.

> Q:    Did the 202 or the AMBER have any duties out there other than what you have described for me; that is, either bringing you all from the dock to the living quarters platform, and then typically the AMBER providing you with a means of transportation to do the work at the wellheads?  Did either of those vessels do other thangs that you're aware of?
>
> A:    Not those two, no.[48]

Claimant's duties, on the other hand, were related to the well-control units.  Claimant admitted in his deposition that his job was to maintain and operate the wells in the Sweet Lake field.   In his deposition, he described his duties as maintaining the wells and all the equipment in Sweet Lake.  He checked chemicals, read gauges, and made sure the pumps were pumping and there were no leaks at the well-control units.[49]

Claimant used the M/V AMBER to reach the various well-control units, but he was not a licensed captain nor did he have any formal maritime schooling or training.[50] Rather, his operation of the boat was only incidental to the travel for his job maintaining and operating the wells.  He testified that he occasionally performed some minor work on

---

[46] *Id.*
[47] *Id.* citing *Munguia,* supra, and *Coulter v. Texaco, Inc.,* 714 F.2d 467, 469 (5th Cir. 1983).
[48] Exhibit C, p. 90:11-18.
[49] Exhibit C, p. 11-12, 20-21
[50] Exhibit C, p. 30:13-15.

some of the boats parts for the vessels kept at Sweet Lake, but repairs to the boats were typically handled by someone else.[51]   Like the plaintiff in *Ketnor,* Claimant's primary duties were neither to pilot nor to maintain the boats nor use them as a place to work.[52] Claimant only used them as a means of getting to and from his the well-connection units and other structures.  Likewise, Claimant was not the sole pilot of the M/V AMBER nor was it specifically assigned to him.

Further, the M/V AMBER was not a special purpose vessel used by Claimant to perform his job as a C Class Operator.  As Claimant readily admits, the M/V AMBER was an aluminum hull, Scully boat with an outboard motor.[53]  It was not outfitted with any special tools or equipment which helped him perform his work.  Instead, Claimant carried a small crescent wrench and channel locks on him and also used a toolbox with some additional hand tools including a 1 5/8th inch wrench.[54]  These tools were loaded onto which ever boat Claimant was using.  At each well-control unit/platform, he unloaded the tools needed, if any, to perform the work required at the platform.  The function of the M/V AMBER was to provide transportation.  Claimant's work was to maintain and operate the wells.  Thus, Claimant was not contributing to the function of the M/V AMBER's work and cannot meet the first prong of the seaman test.[55]

### 2. The undisputed facts establish that Claimant did not have a substantial connection to the vessel.

Even if Claimant had contributed to the function or mission of the vessel – which he did not – said contribution alone is not sufficient to qualify for seaman status. Claimant

---

[51] Exhibit C, p. 90-91.
[52] *Ketnor,* 850 F.2d at 239.
[53] Exhibit C, p. 14.
[54] Exhibit C, p. 23:7-24:14.
[55] See *Pearson v. Offshore Specialty Fabricators, Inc.,* 1992 U.S. Dist. LEXIS 15246, at *6 (E.D. La. Oct. 6, 1992)

must also show a connection to the M/V AMBER that is substantial in both nature and duration.[56]   To determine the temporal element, the Supreme Court adopted the rule of thumb that a worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act.[57]

Here, the undisputed facts establish that Claimant spent less than 30% of his employment with Prosper in the service of a vessel.    Claimant was hired on March 20, 2014 and worked 3,175 hours for Prosper in the Sweet Lake field.[58]   In order for Claimant to travel via boat to all of the well-control units in the Sweet Lake field, it would take Claimant approximately 20 minutes total.[59]   At most, Claimant would have to make two full trips to the well-control units per day.[60]   While Claimant may have spent more time in the field working at each well-control unit, his travel time via boat would be approximately 40 minutes total per day or 4.7 hours total per week.

Claimant worked seven days on then seven days off.   During the time he worked for Prosper, he worked 33 weeks.[61] If Claimant traveled to the well-control units via boat 4.7 hours per week for 33 weeks, he spent 155.1 hours in a boat for transportation purposes.   This would be 4.89% of the total hours he worked.   Claimant also traveled via barge to pump chemicals at the well-control units.   This task took approximately 4 hours and was performed, at the most, once per week or 132 hours for total amount of time Claimant worked for Prosper.    This would be 4.16% the total hours he worked.   In total, he spent 9.05% of his time on a boat.

---

[56] *Chandris*, 515 U.S. at 368.
[57] *Id.* at 371.
[58] See Exhibit A-1.
[59] See Exhibit B.
[60] See Exhibit B.
[61] See Exhibit A-1.

The 9.05% of his time he spent on a boat, however, does not qualify time spent *in service of a vessel* for purpose of determining seaman status as required by *Chandris* and its progeny.  Specifically, in *Munguia v. Chevron Co., U.S.A. (Munguia II)*, the Fifth Circuit held that an oilfield worker whose primary job responsibility involves working on fixed platforms cannot be classified as a seaman based on travel over water to platforms or incidental work tasks performed on a vessel that is used as a means of transportation to and from platforms. [62]

In *Munguia II*, the employee was an oil field roustabout assigned to repair and maintain oil and gas platforms.[63] To perform this work, he used small boats to travel between platforms.[64] The employee was required to pilot, clean, and perform maintenance work on the boats used to travel to work sites.[65] The Fifth Circuit found that the incidental work the employee performed aboard vessels did not equate to a substantial connection to those vessels, nor was his use of the vessels tantamount to an assignment to a fleet of vessels.[66] As stated by the Court:

> The various boats were merely a means of transportation. They constituted in effect a boat pool, a nautical motor pool, from which he daily selected or was assigned a boat to enable him to transport himself and his equipment to the various places where his pumping, gauging, or other platform work was to be done.
> ***
> Although he did some incidental work that contributed to the maintenance and operation of the vessels, his primary duties were neither to pilot nor maintain the boats nor to use them as a place of work. He used them only as a means of getting to and from his work on platforms and other structures.[67]

---

[62] *Mungia v. Chevron Co., U.S.A.*, 768 F.2d 649 (5th Cir. 1985) (*Munguia II*).
[63] *Mungia v. Chevron Co., U.S.A.*, 768 F.2d 649, 650, 653.
[64] *Id.* at 650.
[65] *Id.* at 651.
[66] *Id.* at 653.
[67] *Id.* at 653.

Likewise, in *Spence v. Delta Engineering Corp*,[68] the Court rejected a seaman status claim asserted by an oilfield platform worker who piloted, maintained, and performed deckhand work aboard small vessels that were used as a means of transportation between the fixed work sites.[69] In rejecting the plaintiff's argument that he was a seaman, the Court held that such vessel-related functions were not only insubstantial, but were also "incidental to the primary work being performed by the plaintiff as an oilfield construction worker on fixed offshore platforms in the Gulf."[70]

The instant matter is analogous with the facts in *Munguia*. Here, Claimant was assigned to work as an operator in the Sweet Lake field. The Sweet Lake field includes several oil producing wells. Each well has a well-control unit which is situated on a stationary platform that is accessible only by water. As Claimant testified during his deposition, it was his responsibility to maintain and operate the various wells in Sweet Lake.[71] Claimant worked for seven days, then was off for seven days.[72] When on duty, he was provided sleeping quarters and meals in a trailer on a fixed platform in Sweet Lake.[73] There was typically three different vessels that were tied to the fixed platform which any of the workers at the Sweet Lake field could use: the M/V AMBER, a 202 crew-boat, and a UCO barge.[74] The vessels were located in Sweet Lake field for the sole purpose of enabling the workers to service the production field.[75] Each day Claimant was responsible

---

[68] 1987 U.S. Dist. LEXIS 2211 (E.D. La Mar. 19, 1987).
[69] *Id.*
[70] *Id.* at p. 3. (emphasis added) *See also, Borne v. Vintage Petroleum, Inc.*, 949 F. Supp. 492, 493 (S.D. Tex. 1996) ("The fact that [the plaintiff] also piloted the crew boats and performed some routine maintenance on them does not qualify [the plaintiff] as having done a 'substantial amount of his work' on a vessel ... Plaintiff's use of the boats was merely as a means of getting to and from the sites where he performed his actual job duties as a gauger and operator").
[71] Exhibit C, p. 11:13-12:6.
[72] Exhibit B and Exhibit C, p. 13:19-24.
[73] Exhibit C, p. 13:1-5.
[74] Exhibit C, p. 14, 28.
[75] Exhibit C, p. 90:11-18.

for working on the various wells.[76]  In order to do so, Claimant took a boat – typically the M/V AMBER but sometimes the 202 crew boat – to visit the various well-control units/small platforms within the field.[77]  When Claimant was not doing work at the well-control unit platforms, he was back at the living trailer on the fixed platform.[78]  Likewise, the time spent pumping chemicals from the UCO barge to the well-control units is also irrelevant to the 30% calculation.  Time spent performing work related to a stationary platform, even if technically on board a vessel, is not considered time spent in service of that vessel.[79]

Prosper anticipates that Claimant will argue that he testified that he usually stayed out on the water for six hours a day; thus, he spent more than 30% of his time on a boat. However, as noted above, that is not sufficient to establish that he spent time in service of a vessel because the time that platform workers spend on transport vessels going to and from a stationary platform is not considered time spent in service of a vessel.[80]  Also, this argument misconstrues the totality of Claimant's testimony.   First, when Claimant testified about his six hour sojourn, he was doing so in response to a question by Prosper's counsel about how long it would take him to do the work if he went to each well-control unit, checking each one and adjusting it as needed.[81]   Further, Claimant repeatedly

---

[76] Exhibit B and Exhibit C.

[77] Exhibit C, p. 84.

[78] Exhibit C, p. 13:12-15.

[79] *Lee v. Nacher Corp.,* 362 F.Supp.3d 359, 367 (E.D.La. 1/24/19) *(citing Butcher v. Superior Offshore,* 357 Fed. App'x 619, 620 (5th Cir. 2009) ("[Plaintiff] worked thirty percent of his time on board the vessel but this included time spent for meals and breaks, which does not make [plaintiff] a seaman."); *Hufnagel v. Omega Serv. Ind., Inc.,* 182 F.3d 340, 344-45 (5th Cir. 1999); *Pearson v. Offshore Specialty Fabricators, Inc.,* No. CIV. A. 91-3350, 1992 U.S. Dist. LEXIS 15246, 1992 WL 300826, at *2-*3 (E.D. La. Oct. 8, 1992) (finding a plaintiff tasked with sandblasting and painting a platform was not a seaman because his time on a vessel attached to the platform did not contribute to the vessel's mission of providing sleeping and eating quarters to people working on the platform).

[80] See *Lee,* supra, (citing *Munguia,* 768 F.2d at 653; *Barrios v. Engine & Gas Compressor Servs., Inc.,* 669 F.2d 350 , 353 (5th Cir. 1982); *Stanley v. Guy Scroggins Constr. Co.,* 297 F.2d 374, 377 (5th Cir. 1961); and *Borne v. Vintage Petroleum, Inc.,* 949 F.Supp. 492, 493-94 (S.D.Tex. 1996).

[81] See Exhibit C, p. 25:18-24.

testified regarding the close proximity of the various well-control units from the fixed living platform and the dock.  Per Claimant's own testimony, it was only a 15 minute boat ride from the dock to the fixed living platform[82] and the nearest wellhead to the platform was 60 seconds away while the furthest was about 20 minutes away.[83]  The well-control unit at which he was located when the instant accident occurred was only two minutes away from the fixed platform.[84]  Thus, it appears clear from Claimant's testimony that the six hours in the boat refers both to the time he travelled to the well-control units as well as the time he spent working on the well-control units.

### III.   CONCLUSION

The undisputed facts in this matter establish that: 1) Claimant was hired to work as an operator on a well-control units at fixed platforms in the Sweet Lake oil production field; 2) he, along with the rest of the workers at the Sweet Lake field, were allowed to use the three different vessels in the field but Claimant not permanently assigned to any vessel; 3) the purpose of the M/V AMBER was to provide transportation to the various well-control units; 4) Claimant's work duties related to the maintenance and operation of the wells but did not contribute to the function or miss of the M/V AMBER; and 4) Claimant merely used the vessels as a means of transportation to the various well-control units.  Accordingly, Claimant is not a seaman for purposes of the Jones Act.  For the foregoing reasons, Prosper respectfully requests that this Honorable Court grant its Motion for Summary Judgment, holding that Claimant is not a Jones Act seaman, dismissing Claimant's Jones Act claims against Prosper, with prejudice, and awarding Prosper all costs and attorney fees incurred with filing the instant motion.

---

[82] Exhibit C, p. 16:10-13,
[83] Exhibit C, p. 18:22-19:5.
[84] Exhibit C, p. 35:18-23.

Respectfully submitted,

BROWN SIMS, P.C.

BY:  */s/ Kelly F. Walsh*_____
       L. LANE ROY (#11513)
       Brown Sims, P.C.
       600 Jefferson Street, Suite 800
       Lafayette, Louisiana 70501
       E-Mail: lroy@brownsims.com
       Telephone:   (337)484-1240
       Facsimile:   (337)484-1241
       and
       KELLY F. WALSH (#31352)
       MARK T. TUFTS (#36710)
       Brown Sims, P.C.
       1100 Poydras Street, 39th Floor
       New Orleans, Louisiana 70163
       E-Mail: kwalsh@brownsims.com
            mtufts@brownsims.com
       Telephone:   (504)569-1007
       Facsimile:   (504)569-9255

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of June 2019, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all known counsel of record by operation of Court's electronic filing system.

       */s/ Kelly F. Walsh*_____
       Kelly F. Walsh