UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF PROSPER OPERATORS, INC. AS OPERATORS OF THE MOTOR VESSEL AMBER, FOR EXONERATION FROM OR LIMITATION OF LIABILITY | * CIVIL ACTION NO. 2:16-CV-01363 <br> * (Admiralty) <br> * <br> * JUDGE ROBERT R. SUMMERHAYS <br> * <br> * MAGISTRATE JUDGE KATHLEEN KAY |

## DECLARATION OF STEVEN MATT

Pursuant to 28 U.S.C. §1746, I, Steven Matt, hereby declare as follows:

1. I am a person of the full age of majority and give this Declaration on the basis of personal knowledge.
2. My name is Steven Matt, and I am currently employed by Prosper Operators, Inc. ("Prosper") as a Class A Operator.
3. I currently work in the Sweet Lake production field and have worked there at all times relevant to this litigation.
4. Sweet Lake is an inland lake located in Cameron Parish. There are a number of wells with well-control units (often called Christmas trees) located throughout Sweet Lake. Surrounding each well-control unit is a stationary work platform. Attached as Exhibit 1 is a picture of one of the well-control units, YL No. 28, located in the Sweet Lake field with a number of other well-control units in the background.
5. During his employment with Prosper, I was Mr. Navarre's direct supervisor. Thus, I have personal knowledge of the hours worked, locations worked, jobs worked, and job duties of Mr. Navarre during his employment with Prosper.
6. Mr. Navarre also worked in the Sweet Lake production field as a C Level Operator during his entire employment with Prosper. Both Mr. Navarre and I worked seven days on, seven days off. During the seven days on, we lived on a fixed platform in Sweet Lake.
7. As a C Level Operator, Mr. Navarre was responsible for travelling to the various well-control units located throughout Sweet Lake to read the gauges and monitor for leaks. At times, Mr. Navarre also operated the surface production equipment, compressors, pumps, and generators located at these well-control units. All of the work performed at these well-control units was performed from the platform at each unit.



EXHIBIT B

8. Our typical work day lasted 12 hours but we were on call for 24 hours per day if there was an issue with one of the well-control units.
9. During that 12 hour period, Mr. Navarre was expected to travel to every well-control unit in Sweet Lake field two times. If there was a problem with one of the well-control units, it was not uncommon for Mr. Navarre to only travel to one well-control unit and stay on the unit all day in order to fix the problem. However, if there was a problem with a well-control unit, I would have been at the well-unit with Mr. Navarre, working on whatever problem may have occurred.
10. Each well-control unit is accessible only by water. In order to travel to a well-control unit, a person had the option of taking one of two boats, the M/V AMBER which is a 23 foot, aluminum boat with an outboard motor or a 40 foot 202 crew boat with an inboard motor. The sole purpose of those boats was to enable the workers to service the production field. Attached as Exhibit 2 is a picture of the M/V ASHLEY. While it was not in Sweet Lake during the time of Mr. Navarre's employment, it is nearly identical to the M/V AMBER.
11. Not including the time working on each the various well-control units, the total amount of time it would take to travel from the fixed platform to each well-control unit the back to the fixed platform was approximately ten minutes.
12. Also located in Sweet Lake was an 80 foot barge which was used to load chemicals. If chemicals were needed, the barge was taken to the dock at Sweet Lake to pick up totes of chemicals and transfer them to the barge. The barge was then driven, usually by myself, to the well-control units so that chemicals could be pumped from to the unit. This typically took approximately four hours and, at most, was done once per week.
13. In June 14, 2015, we were adjusting the gas lift. Mr. Navarre took the M/V AMBER to travel to the YL 28 platform (see Exhibit A-1) to perform a gas lift adjustment.
14. I did not witness the alleged accident, but according to Mr. Navarre, he did not tie up the M/V AMBER when he got off to work on the platform and the M/V AMBER started to move away from the platform. He jumped from the platform into the M/V AMBER, injuring his heel.

I declare under the penalty of perjury that the foregoing factual statement are true and correct.

Executed this ___19th___ day of June, 2019, Lafayette, Louisiana.

*Steven Matt* (signature)

Steven Matt



EXHIBIT B-1



EXHIBIT B-2