UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

IN RE PROSPER OPERATORS,  : CASE NO. 2:16-CV-01363
INC.; as operator of the M/V AMBER

: JUDGE JAMES D. CAIN, JR.

: MAGISTRATE JUDGE KAY

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 45] filed under Federal Rule of Civil Procedure 56 by Prosper Operators, Inc. ("Prosper"), the plaintiff in this limitation action. Claimant Mitchell Navarre opposes the motion. Doc. 53.

### I.
### BACKGROUND

This suit arises from injuries allegedly suffered by Navarre during his employment with Prosper. Doc. 1, ¶ 6. Navarre worked as an operator in the Sweet Lake oil production field in Cameron Parish, Louisiana. Doc. 45, att. 3. As an operator, Navarre was responsible for traveling to the well-control units throughout Sweet Lake in order to read gauges and monitor them for leaks. Doc. 45, att. 4, ¶¶ 7–10. He used Prosper's boat, the motor vessel Amber, to reach the well-control units, which are accessible only by water. *Id.*

Navarre contends that he was injured aboard the M/V Amber on June 14, 2015.[1] Doc. 7, att. 4. He filed a petition for damages against Prosper in the 38th Judicial District

---

[1] Navarre testified that he had to jump from a well platform into the M/V Amber when the boat began to drift away, and that he injured his right foot and ankle on landing. Doc. 45, att. 5, pp. 11–14. He also testified that the water was abnormally rough that day, and that there was no place to tie up the boat on the platform. *Id.*

Court, Cameron Parish, Louisiana. *Id.* There he alleged that he was a Jones Act seaman under 46 U.S.C. § 30104 and invoked his right to pursue the action in state court under the savings to suitors clause of 28 U.S.C. § 1333. *Id.* at ¶¶ 2, 9.

As operator of the M/V Amber, Prosper then filed a complaint in this court for exoneration from or limitation of liability in this court. Doc. 1. It seeks to limit its liability to the value of the vessel at $20,000. *Id.* Navarre responded by raising claims in this suit under the Jones Act and maritime law, alleging that his injuries were caused by the M/V Amber's unseaworthiness and Prosper's negligent acts and omissions. Doc. 10. Accordingly, he asserts that he is entitled to compensatory and punitive damages exceeding the vessel's value as well as maintenance and cure. *Id.*

Prosper now moves for summary judgment on the Jones Act claim, asserting that Navarre cannot maintain a claim under that statute because he does not qualify as a seaman. Doc. 45. Navarre opposes the motion, arguing that he is a seaman and that Prosper is improperly using this limitation proceeding as an end-run around his right to pursue his Jones Act claim in the pending state court suit. Doc. 53.

## II.
### SUMMARY JUDGMENT STANDARDS

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by

pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

#### *A. Whether Navarre's seaman status may be considered in limitation proceeding*

The Jones Act provides a cause of action in negligence for a seaman injured in the course of his employment, lifting a bar on personal injury claims imposed under general maritime law. 46 U.S.C. § 30104; *see Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995). The savings to suitors clause preserves a plaintiff's right to pursue common law remedies

for admiralty and maritime claims, including those brought under the Jones Act, in his choice of forum. 28 U.S.C. § 1333(1); *see, e.g., Gregoire v. Enterprise Marine Svcs., LLC*, 38 F.Supp.3d 749, 754–56 (E.D. La. 2014). Under the Limitation of Liability Act ("Limitation Act"), 46 U.S.C. § 30501 *et seq.*, however, a shipowner may file a petition in federal court seeking limitation of his liability for a maritime accident to the value of the vessel and its freight then pending.[2] "One statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 448 (2001).

Under these competing interests, the federal court's "primary concern is to protect the shipowner's right to claim the [Limitation] Act's liability cap, and to reserve adjudication of that right in the federal forum." *Magnolia Marine Transp. Co. v. Laplace Towing Corp.*, 964 F.2d 1571, 1575 (5th Cir. 1992). Accordingly, it stays litigation against the vessel owner while determining the owner's right to limitation and is only required to lift the stay when (1) it determines that the total amount of claims does not exceed the declared value of the vessel and its freight or (2) all claimants stipulate that the federal court has exclusive jurisdiction over the limitation proceeding and that they will not seek to enforce a damage award greater than the value of the ship and its freight until the shipowner's right to limitation has been determined by the court.[3] *Odeco Oil and Gas Co.*,

---

[2] Navarre argues that, because a limitations proceeding only limits Prosper's liability for maritime damages, it (Prosper) presupposes that he is a seaman by instituting this limitation proceeding. Doc. 53, pp. 6–7. As Prosper points out, however, there are time constraints for filing a limitation action and this time period might have expired before Navarre's seaman status could be determined in the state court proceeding. *See* 46 U.S.C. § 30511(a). Therefore the institution of limitation proceedings in this court does not amount to admission of Navarre's seaman status.

[3] Navarre appears to invoke the "single claimant" rule for lifting the stay, arguing that the Limitation act "could not be construed to deprive suitors of their common law rights under the Savings to Suitors clause, particularly where there exists only one claimant." Doc. 53, p. 6. That rule, however, still requires that the single claimant file appropriate

-4-

*Drilling Div. v. Bonnette*, 74 F.3d 671, 673 (5th Cir. 1996). If the vessel owner's right to limitation is not adequately protected, the court "may proceed to adjudicate the merits, deciding the issues of liability and limitation." *Lewis & Clark Marine*, 531 U.S. at 454.

Here no basis has been presented for lifting the stay, and so the court may consider the merits of Navarre's claims in deciding Prosper's right to limitation or exoneration. Accordingly, the motion for summary judgment challenging Navarre's right to relief under the Jones Act is properly before the court. *See, e.g., In re Endeavor Marine, Inc.*, 234 F.3d 287 (5th Cir. 2000); *In re Two-J Ranch, Inc.*, 534 F.Supp.2d 671 (W.D. La. 2008); *In re Complaint of O'Meara, Inc.*, 2002 WL 1433881 (E.D. La. Jun. 28, 2002) (considering motions for summary judgment on claimant's seaman status in limitation proceeding, though Jones Act claims were also raised in stayed state court proceeding).

### B. Navarre's right to proceed under Jones Act

#### 1. Test for seaman status under Jones Act

As noted above, the Jones Act provides remedies in tort for a seaman who is injured in the course of his employment. Land-based maritime employees, on the other hand, are limited to worker's compensation under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.*[4] *In re Two-J Ranch*, 534 F.Supp.2d at 677. A plaintiff is only a seaman under the Jones Act if (1) his duties contribute to the function of the vessel or the accomplishment of its mission, and (2) he has

---

stipulations regarding the value of his claim. *In re Santa Fe Cruz, Inc.*, 535 F.Supp.2d 853, 858–59 (S.D. Tex. 2007); *see Texaco, Inc. v. Williams*, 47 F.3d 765, 767 (5th Cir. 1995) (explaining nature of stipulation that claimant must offer).
[4] Prosper asserts that it already paid Navarre worker's compensation benefits under the LHWCA, and that it first learned of his intention to pursue damages under the Jones Act when he filed suit in state court. Doc. 45, att. 2, p. 4.

a connection to a vessel in navigation that is substantial both in duration and nature. *Chandris*, 515 U.S. at 368.

"To satisfy the first prong of the *Chandris* test, the claimant need only show that he 'do[es] the ship's work.'" *Endeavour Marine*, 234 F.3d at 290. This requirement is very broad. *Id.* Under the second prong, the court must look to

> the total circumstances of an individual's employment . . . to determine whether he had a sufficient relationship to the navigation of vessels and the perils attendant thereon. The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

*Chandris*, 515 U.S. at 370. Because the issue is largely a factual determination, "[t]he Fifth Circuit strongly discourages summary judgment on the question of whether [a] claimant meets this test." *O'Meara*, 2002 WL 1433881 at *1 (citing *Sharp v. Johnson Bros. Corp.*, 917 F.2d 885, 888 (5th Cir. 1990)). Accordingly, the question should only be taken from the jury "where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation . . . ." *Chandris*, 515 U.S. at 371. To establish a sufficient temporal connection, a plaintiff must show that he spends at least 30 percent of his time in service of a vessel or an identifiable group of vessels. *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 374–75 (5th Cir. 2001). Fixed platforms do not qualify as vessels. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 391 (5th Cir. 2003).

*2. Application*

At the time of the accident Navarre was employed by Prosper as an operator, working seven days on and seven days off at twelve hours per day. Doc. 45, att. 3, p. 1

(declaration of Prosper president Charles Abshire); doc. 53, att. 2, ¶¶ 2, 7 (Navarre declaration). In this job, states his former supervisor Steven Matt, he was responsible for traveling to well control units throughout the Sweet Lake oil field to read the gauges and monitors for leaks and to operate equipment located at the units. Doc. 45, att. 4, ¶ 7. Matt further states that all work performed on these units was done from the platform. *Id.* Navarre used the M/V Amber, a 23-foot aluminum boat fitted with an outboard motor, to travel between platforms. *Id.* at ¶¶ 7–10. He was expected to visit each platform twice throughout his twelve-hour shifts. *Id.* Matt estimated that, "[n]ot including the time working on each [of] the various well-control units, the total amount of time it would take to travel from the fixed platform to each well-control unit [] back to the fixed platform was approximately ten minutes." *Id.* at ¶ 11.

Navarre declares, however, that all his duties with Prosper involved piloting the M/V Amber and other vessels in Prosper's fleet.[5] He estimates that spent approximately 54 hours of each 84-hour work week actually operating the M/V Amber or two other vessels to which he was occasionally assigned. Doc. 53, att. 2, ¶ 15; *see id.* at ¶ 6. During each seven-day "hitch," however, he states that he served as "the only captain, pilot and crew member" of the three boats and that he "performed all routine maintenance and minor repairs on these vessels." Doc. 53, att. 2, ¶ 6.

---

[5] In addition to the well control unit inspection and maintenance duties described above, Navarre states that he was also charged with (1) inspecting and maintaining the tank battery located on the Intracoastal Waterway, on the south end of Sweet Lake, (2) traveling between the platform and the company docks at the beginning and end of each seven-day hitch, and at least five times per week to dispose of trash or retrieve parts and material from the dock, and (3) transporting visitors to the field. *Id.* at ¶¶ 12–15.

Prosper asserts that Navarre is not a Jones Act seaman, based on the above evidence, because the M/V Amber was merely a transport vehicle while Navarre's job was to maintain and operate the wells. Doc. 45, att. 2, pp. 8–9. It also claims that Navarre's primary duties were neither to pilot nor to maintain the boats, and asserts that Navarre's summary judgment evidence should be disregarded because it contradicts testimony from his deposition regarding his job duties. *See* doc. 55, pp. 9–10.

Under the "sham affidavit" doctrine, the court recognizes that a non-moving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment. *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). Accordingly, the court may ignore the non-movant's affidavit if it is contradicted by earlier deposition testimony without adequate explanation. *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 268 (5th Cir. 2010). Prosper asserts that Navarre's declaration must be disregarded in light of the following apparent contradictions:

- Navarre's assertion in his Statement of Contested Issues of Fact that his "primary job duty was to operate a motorboat to service well-control units" [doc. 53, att. 1, ¶ 1; *see* declaration at doc. 53, att. 2, ¶ 2] and his declaration that he performed routine maintenance and minor repairs on the vessels [doc. 53, att. 2, ¶ 6] with his deposition testimony that (1) his job was to "maintain and operate the field" [doc. 45, att. 5, p. 3], (2) when he was not working, he was in a trailer on the platform [*id.*], and (3) major repairs on the vessels were outsourced [*id.* at 23].

- Navarre's claim that he served as the only pilot, captain, or crew member of the three boats specified during each hitch [doc. 53, att. 2, ¶ 6] with (1) his testimony

that he was not a licensed captain and did not have any formal maritime schooling or training [doc. 45, att. 5, p. 8]; (2) his use of "we," presumably including his supervisor Steven Matt, when describing who would use the vessels at the platform to perform the well-control unit checks; and (3) his admission that Matt would drive the boat when he (Navarre) was making a shift change [*id.* at 5].[6]

The conflicts asserted there, however, are too minor to treat the declaration as a sham. Navarre's characterizations of his work from the two accounts are not in direct conflict, and his admissions that he lacked formal maritime training does not contradict his assertion that he was charged with piloting a vessel as part of his work. Additionally, his deposition testimony supports the most salient points of his declaration, including his assertion that he piloted the boat alone [*id.* at 5].

Courts have granted summary judgment based on a lack of seaman status when it is undisputed that the claimant's only connection with the vessel is to be carried to and from an offshore work site, without aiding in the vessel's mission. *See Kentnor v. Automatic Power, Inc.*, 850 F.2d 236, 238–39 (5th Cir. 1988) (finding that the plaintiff's work on the vessels "in no way contributed to [their] transportation function" and that he "merely rode on the vessels to go from rig to rig . . . .") Summary judgment has been denied, however, for oilfield workers on transportation vessels when their work "become[s] the piloting, navigation, loading, and unloading of" these boats, such that they are "exposed . . . to the

---

[6] Prosper also points to Matt's declaration that he typically drove one of the vessels described by Navarre, an 80-foot barge. *See* doc. 45, att. 4, ¶ 12. Conflicts between Matt's account and Navarre's show a contested issue of fact at this stage, rather than the existence of a sham affidavit.

peril of the sea which is the foundation of Jones Act coverage." *Munguia v. Chevron Co., USA*, 675 F.2d 630, 633 (5th Cir. 1982) (internal quotations omitted).

The issue, then, is whether Navarre contributed sufficiently to the vessel's transportation mission, or whether the vessel was "an aquatic taxi, simply an adjunct to a land-based drilling operation to which [he] was assigned." *Lafontaine v. Chevron USA, Inc.*, 1993 WL 370612, at *3 (E.D. La. 1993). The conflicts between Navarre and Prosper's evidence prevent the court from making such a determination. Specifically, Navarre has raised disputes as to how many hours he spent actually operating an identifiable vessel or otherwise contributing to its mission and what other vessel-based duties he might have had. He has thus shown that genuine issues of material fact exist on whether he was performing the work of the vessel and the question of his seaman qualification under the Jones Act must be reserved for trial.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 45] will be denied.

**THUS DONE** in Chambers on this __23__ day of __August__, 2019.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE